**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

**BASIM A. TALOUZI**,

   **Movant,**

            **Civil Action No. 3:13-cv-09385**
**v.**           **(Criminal No: 3:11-cr-00074-1)**


**UNITED STATES OF AMERICA,**

   **Respondent.**


## PROPOSED FINDINGS AND RECOMMENDATIONS

Pending before the Court are Movant's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, and Application to Proceed Without Prepayment of Fees and Costs.[1] (ECF No. 242, 244). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by Standing Order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, the undersigned respectfully **RECOMMENDS** that Movant's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 be **DENIED,** and this action be **DISMISSED, with**

---

[1] Also pending is the Movant's Motion to Supplement the Record with exhibits related to telephone calls placed by Talouzi at the Carter County Detention Center. (ECF No. 266). The United States did not oppose the inclusion of the phone records in the record. Accordingly, the undersigned **GRANTS** the Movant's Motion to Supplement the Record and incorporates the exhibits into the record. (ECF No. 266-1).

**prejudice,** and removed from the docket of the Court.

## I.   Procedural History

On March 2, 2011, Movant Basim Ali Talouzi ("Talouzi") was indicted by a federal grand jury on a 24-count indictment charging him with one count of conspiring to transport, receive, possess, purchase, and sell contraband cigarettes in violation of 18 U.S.C. § 371; seventeen counts of purchasing various quantities of contraband cigarettes in violation of 18 U.S.C. §§ 2342(a) and 2; five counts of distributing oxycodone in violation of 21 U.S.C. § 841(a)(1); and one count of distributing oxycodone in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. (ECF No. 1). At the time of his indictment, Talouzi was also subject to supervised release pursuant to a 2000 federal criminal conviction. (S.D.W.Va. Case No. 5:98-cr-00173, ECF No. 130). Based upon Talouzi's indictment, a petition to revoke his supervised release was filed in his prior case. (S.D.W.Va. Case No. 5:98-cr-00173, ECF No. 139).

On March 23, 2011, Talouzi entered into an agreement with the Government, in which he agreed to plead guilty to Counts One (conspiracy to defraud the United States in violation of 18 U.S.C. § 371), and Twenty-three (distribution of oxycodone in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2). (ECF No. 69 at 2). In exchange, the United States agreed to dismiss all remaining charges on the indictment. (*Id.*).

In the plea agreement, Talouzi "knowingly and voluntarily waive[d] his right to seek appellate review of any sentence of imprisonment or fine imposed by the District Court . . . on any other ground whatsoever including any ground set forth in 18 U.S.C. § 3742, so long as that sentence of imprisonment or fine [was] below or within the Sentencing Guideline range determined corresponding to offense level 22." (*Id.* at 7).

2

Talouzi also signed a Stipulation of Facts, which set forth the facts comprising the offense of conviction and relevant conduct for that offense. (*Id.* at 10-11). Talouzi stipulated that between July 2010 and January 2011, he and others "conspired to purchase and transport contraband cigarettes" as defined in 18 U.S.C. § 2341. (*Id.* at 10). Talouzi stipulated to arranging multiple sales and deliveries of contraband cigarettes. (*Id.*). Talouzi agreed that "[t]he total amount of contraband cigarettes equals 3,422,400 or 17,112 cartons," and that the total tax loss to the State of West Virginia was $94,116. (ECF No. 69 at 11). Additionally, Talouzi stipulated that on September 14, 2010, he "sold approximately thirty 80 mg oxycodone tablets" to an undercover ATF agent for $2,250; and that between July 2010 and October 2010, he "distributed or aided and abetted the distribution of a total of eighty-seven 80 mg oxycodone tablets and fifty 30 mg oxycodone tablets to an undercover ATF agent." (*Id.*).

Talouzi's plea hearing was held on April 4, 2011. (ECF No. 249 at 1). At the hearing, the District Court had Tim Carrico, Talouzi's counsel ("Counsel"), summarize each paragraph of the plea agreement, (*Id.* at 4-12), after which Talouzi pleaded guilty to Counts One and Twenty-Three, (*Id.* at 14), and described in his own words why he was guilty of the each count. (*Id.* at 17-20; 22-23). ATF Agent Todd Willard corroborated Talouzi's statements with testimony regarding his participation in the case as an undercover agent. (*Id.* at 24-28). After conducting a thorough Rule 11 plea colloquy, (*Id.* at 28-36), the District Court accepted Talouzi's guilty plea, finding him to be "fully competent and capable of entering an informed plea, there's a sufficient factual basis for his guilty pleas, he understands the nature of the charges and the consequences of pleading guilty, he understands the rights he's giving up by pleading guilty, and his

3

pleas are voluntary." (ECF No. 249 at 36). In light of Talouzi's guilty plea, the District Court also "conclude[d] by a preponderance of the evidence that Mr. Talouzi violated the conditions of supervised release" on his 2000 conviction. (*Id.* at 38).

Talouzi's sentencing hearing was held on August 15, 2011. (ECF No. 250). Regarding the presentence report, the District Court (1) rejected the Government's argument in support of a two-level increase for Obstruction of Justice under U.S.S.C. § 3C1.1. (*Id.* at 3-9); and (2) sustained Talouzi's objection that his two offenses constituted "closely related offenses," thereby enabling him to avoid a two-level increase under U.S.S.G. § 3D1.4. (*Id.* at 9-17). Accordingly, Talouzi's base offense level was 20. (*Id.* at 21). He received a two-level deduction for acceptance of responsibility, and the Government moved for a third level deduction, which brought Talouzi's total offense level down from 20 to 17. (*Id.*). Talouzi had five criminal history points,[2] which placed him in Criminal History Category III, and resulted in an advisory sentencing range of 30 to 37 months. (*Id.*). No objection was raised by either party to the District Court's calculations under the Sentencing Guidelines. (ECF No. 250 at 22). The District Court then denied Talouzi's request for a downward variance, (*Id.* at 27-28), and sentenced him 36 months imprisonment to run concurrently on both counts. (*Id.* at 29).

Regarding Talouzi's revocation of supervised release on his 2000 conviction, the District Court noted that his current conviction was a Grade A violation under U.S.S.G. § 7B1.1(a)(1), while his 2000 conviction was a Class B felony under 18 U.S.C. § 3559. (*Id.*

---

[2] Talouzi's presentence report reflects that he received three points under U.S.S.G. § 4A1.1(a), for his 2000 conviction for Distribution and Possession with Intent to Distribute Cocaine Base; and two points under U.S.S.G. § 4A1.1(d), because he committed the offenses of conviction while under supervised release. (ECF No. 130 at 12-13).

at 34). Accordingly, the statutory maximum term of imprisonment the District Court could impose for violating supervised release would be 36 months. (*Id.* at 34). However, Talouzi's supervised release had previously been revoked, and he had served 12 months imprisonment. (*Id.*). Thus, on the instant release violation, the maximum sentence he could serve would be 24 months. (ECF No. 250 at 34). Talouzi argued in favor of running the supervised release sentence concurrently with his 36 month sentence on the underlying conviction, but the District Court ordered his 24 month sentence to run consecutively instead. (*Id.* at 36-38).

On May 24, 2012, Talouzi filed a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (ECF No. 194). On November 13, 2012, the United States filed a Response, and on January 3, 2013, Talouzi filed a Reply. (ECF Nos. 225, 233). On January 7, 2013, Talouzi voluntarily moved to dismiss his § 2255 petition. (ECF No. 235). The District Court granted Talouzi's motion to dismiss, and his § 2255 petition was dismissed without prejudice, also on January 7, 2013. (ECF Nos. 236, 237). On April 29, 2013, Talouzi filed a motion seeking to reinstate his initial § 2255 petition "after making some modification to include his other issue of ineffective assistance of counsel," as well as an amended Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (ECF Nos. 240 at 2; 242). On August 8, 2013, an evidentiary hearing was held to address Talouzi's claims of ineffective assistance of counsel. (ECF No. 262). Both Talouzi and his trial counsel testified at the hearing. (*Id.*). On October 1, 2013, Talouzi filed a Motion to Supplement the Record with recordings of phone calls made by Talouzi while at Carter County Detention Center between August 15 and 17, 2011. (ECF No. 266). Both parties also filed memoranda following the evidentiary hearing. (ECF Nos.

265, 267).

## II. **Movant's Grounds to Vacate, Set Aside, or Correct His Sentence**

Talouzi asserts that trial counsel provided ineffective assistance by (1) misadvising Talouzi that his sentence for the criminal convictions would likely run concurrently with his sentence for violating his terms of supervised release; and (2) failing to file an appeal, despite being asked to do so by Talouzi. (ECF No. 243 at 2, 4).

## III. **Standard Under 28 U.S.C. §2255**

A motion made pursuant to 28 U.S.C. § 2255 is a collateral attack on a conviction or sentence imposed in a separate proceeding. *Wall v. Kholi*, 131 S.Ct. 1278, 1284-85, 179 L.Ed.2d. 252 (2011). To succeed on such a motion, the movant must prove that the conviction or sentence was imposed in violation of the laws or Constitution of the United States; or the court imposing the sentence lacked jurisdiction; or the sentence exceeded the maximum authorized by law; or the sentence was otherwise subject to collateral attack. 28 U.S.C. § 2255. Because a § 2255 motion seeks to deny, evade, or impeach a judgment, claims of error that have previously been raised and rejected on a direct appeal of the judgment may not be raised again in a § 2255 motion. *United States v. Harrison*, No. 96-7579, 1997 WL 499671, at *1 (4th Cir. Aug. 25, 1997) (citing *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976).

In this case, Talouzi attacks his conviction and sentence on the ground that his Sixth Amendment right to the effective assistance of counsel was denied at the sentencing and appellate stages of the proceedings when his trial counsel: (1) misadvised him that his conviction sentence and his supervised release violation sentence would be run concurrently; and (2) failed to file an appeal pursuant to his

6

request. (ECF No. 242). The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to effective assistance of counsel during critical stages of criminal proceedings, *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), including sentencing, *see Glover v. United States,* 531 U.S. 198, 203-04, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001), and direct appeal. *Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). While assistance "which is ineffective in preserving fairness does not meet the constitutional mandate," *Strickland,* 466 U.S. at 685-86, "defects in assistance that have no probable effect upon the trial's outcome do not establish a constitutional violation." *Mickens v. Taylor,* 535 U.S. 162, 166, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2001).

Under *Strickland*, a defendant can prove ineffective assistance of counsel by meeting the requirements of a two-prong test. The defendant carries the burden of satisfying both prongs of the test, and "a failure of proof on either prong ends the matter." *United States v. Roane,* 378 F.3d 382, 404 (4th Cir. 1994). First, the defendant must show that counsel's representation fell below an objective standard of reasonableness. When evaluating counsel's performance under the first prong of *Strickland,* "judicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. Thus, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance ... [and] that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks omitted). The inquiry under *Strickland* is "whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common

7

custom." *Harrington v. Richter*, 131 S.Ct. 770, 788, 178 L.Ed.2d 624 (2011) (internal quotations omitted).

The second prong of the *Strickland* test requires the defendant to affirmatively establish prejudice; that is, "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. In the context of sentencing, prejudice is established if the defendant demonstrates a reasonable probability that, but for counsel's errors, he would have received a more favorable sentence. *Glover,* 531 U.S. at 203-04; *United States v. Harris,* No. 3:12-CV-127, 2013 WL 4749903, at \*7 (E.D. Va. Sept. 3, 2013). In the context of an unsuccessful appeal, the prejudice prong is satisfied when the defendant shows a reasonable probability that, but for his counsel's failure to raise a particular issue, he would have prevailed on the appeal. *Smith v. Robbins*, 528 U.S. 259, 285-86, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000).

When the claim of ineffective assistance is based upon counsel's failure to file an appeal after being asked to do so by the defendant, the *Strickland* analysis is simpler. It is now well established that "a criminal defense attorney's failure to file a notice of appeal when requested by his client deprives the defendant of his Sixth Amendment right to the assistance of counsel, notwithstanding that the lost appeal may not have had a reasonable probability of success." *United States v. Peak*, 992 F.2d 39, 42 (4th Cir. 1993); *see also United States v. Poindexter*, 492 F.3d 263, 273 (4th Cir. 2007) ("[A]n attorney is required to file a notice of appeal when unequivocally instructed to do so by his client, even if doing so would be contrary to the plea agreement and harmful to the client's interests."). "Moreover, even if the defendant fails to clearly instruct counsel to

8

note an appeal, counsel must still consult with the defendant about an appeal under certain circumstances." *United States v. Malone*, 442 F. App'x 864, 866 (4th Cir. 2011) (citing *Roe v. Flores–Ortega,* 528 U.S. 470, 478, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000)). As the United States Court of Appeals for the Fourth Circuit explained in *Malone*:

> Specifically, counsel is required to consult with a defendant "when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Consulting entails "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes."

*Id.* (quoting *Flores–Ortega,* 528 U.S. 470 at 478-80).

To establish prejudice, a defendant need only show a reasonable probability that, but for his counsel's failure to consult with him about an appeal or follow the defendant's directive, an appeal would have been filed. *Id.*

## IV.  **Discussion**

### A. **Advice Regarding Sentencing**

Talouzi alleges that trial counsel incorrectly "encourage[ed] him to into a guilty plea and assur[ed] him that his sentence to his instance offences will most likely run concurrent to his supervised release violation." (ECF No. 242 at 4). At sentencing, however, the District Court ordered Talouzi's sentence on the instant underlying offenses to run consecutively with respect to his sentence for violating the terms of his supervised release. (ECF No. 250 at 38). Accordingly, Talouzi argues that he received ineffective assistance of counsel. (ECF No. 242 at 4).

In order to demonstrate ineffective assistance of counsel based upon erroneous

9

advice that leads to an involuntary guilty plea, the defendant must prove: "(1) that counsel's errors were below a standard of reasonable competence, and (2) that but for those errors, the defendant would not have pleaded guilty, but would have instead proceeded to trial." *United States v. Roberts*, 426 F. App'x 195, 196 (4th Cir. 2011) (restating *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)). With respect to incorrect sentencing advice, the Fourth Circuit has held that "if the information given by the court at the Rule 11 hearing corrects or clarifies the earlier erroneous information given by the defendant's attorney and the defendant admits to understanding the court's advice, the criminal justice system must be able to rely on the subsequent dialogue between the court and defendant." *United States v. Foster*, 68 F.3d 86, 88 (4th Cir. 1995) (finding no prejudice where district court cured counsel's purported misadvice regarding sentencing); *see also United States v. Ellerby*, 492 F. App'x 398, 400 (4th Cir. 2012) (same).

In regard to the first prong of the *Strickland* test, Talouzi fails to establish that Counsel's advice regarding sentencing fell below a standard of reasonable competence. At the evidentiary hearing, Talouzi testified that "Mr. Carrico did not promise me that the sentences would be running concurrent." (ECF No. 262 at 46). Instead, Talouzi alleges that Counsel "gave [him] high expectation," (*Id.* at 46, 61), by hypothesizing that it was more likely than not that his sentences would run concurrently, (*Id.* at 46-47, 62), and informing him that the prosecuting attorney had stated that "he has no objection to the sentences running concurrently." (*Id.* at 47). In contrast, Counsel testified that he "felt that the sentence would most likely run consecutively," but that he "had hoped to present an argument to Judge Chambers to hopefully persuade him to do something

10

other than consecutive." (*Id.* at 16). Counsel also testified that during plea negotiations, he "talked to [the prosecutor] about the concurrent and consecutive sentence and basically, he laughed." (*Id.* at 38). However, even assuming as Talouzi alleges that Counsel incorrectly predicted that Talouzi would receive a concurrent sentence on his supervised release violation, this alone does not amount to constitutionally deficient representation. *See Ostrander v. Green*, 46 F.3d 347, 355 (4th Cir. 1995) ("[T]here is a difference between a bad prediction within an accurate description of the law and gross misinformation about the law itself. If the lawyer simply underestimates the sentence, there may not be ineffective assistance."); *United States v. Lambey*, 974 F.2d 1389, 1395-96 (4th Cir. 1992) ("Other than the significant discrepancy between the sentencing range estimated by [counsel's] attorney and the range actually applied, however, the record reveals no evidence of incompetence"); *Little v. Allsbrook*, 731 F.2d 238, 241 (4th Cir. 1984) ("[A]n erroneous sentence estimate by defense counsel does not render a plea involuntary. And a defendant's erroneous expectation, based on his attorney's erroneous estimate, likewise does not render a plea involuntary.") (internal quotations omitted); *Warford v. United States*, Nos. 7:11-CR-00136-FL-1, 7:13-cv-00006-FL, 2013 WL 7785777, at *6 (E.D.N.C. Sept. 23, 2013). As the Fourth Circuit has explained, "[t]o permit [the defendant] to vitiate his plea on the basis of his purported expectation would . . . open the door to habeas relief for all prisoners whose lawyers underestimated the length of their sentences. Such a holding would seriously undermine the finality of judgments entered pursuant to plea bargains." *Little*, 731 F.2d at 242.

Moreover, Talouzi cannot demonstrate prejudice under the second prong of *Strickland* in light of the District Court's admonishments during his Rule 11 colloquy.

11

*See Foster*, 68 F.3d at 88. During the plea hearing, the District Court reminded Talouzi that he exposed himself to a maximum penalty of 25 years imprisonment by virtue of his guilty plea, which Talouzi stated that he understood. (ECF No. 249 at 29). Talouzi stated that he and trial counsel had "discussed the sentencing guidelines and how they might apply to [his case]." (*Id.* at 30). Nevertheless, Talouzi affirmed that he understood "that the Court cannot determine the guideline range for [his] case until a presentence report is done and both sides have a chance to review it and challenge it if either [party] think[s] it's wrong." (*Id.*). Talouzi specifically stated that he understood "that the sentence [the District Court] can impose could be different from any estimate [his] lawyer has given [him]," and that the District Court had discretion to "impose a sentence more severe or less severe than the guidelines might call for." (*Id.*). Additionally, Talouzi denied that anyone had forced, threatened, or talked him into pleading guilty against his will, and asserted that he was "acting voluntarily and of [his] own free will in entering this guilty plea" and that pleading guilty was his own idea. (*Id.* at 35). Finally, the Court asked Talouzi if anyone had "promised [him] something or told [him] anything different from what [they'd] discussed" in court in order to get him to plead guilty, to which Talouzi responded that he had not. (*Id.* at 36). Because the "the trial court properly informed [defendant] of the potential sentence he faced, he could not be prejudiced by any misinformation his counsel allegedly provided him." *Foster*, 68 F.3d at 88. Talouzi's attempt to argue that he was given a "high expectation" of a concurrent sentence, (ECF No. 262 at 47), is foreclosed in light of his sworn statements made during the Rule 11 hearing. *See United States v. Lemaster*, 403 F.3d 216, 221-22 (4th Cir. 2005) ("[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a

Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements."). The fact that Talouzi received a more severe sentence than he hoped for is not grounds to vacate, amend, or alter his sentence.

Therefore, the undersigned **RECOMMENDS** that the District Court **FIND** that trial counsel did not provide ineffective assistance for inaccurately predicting whether Talouzi's sentences would run concurrently or consecutively.

### B. Failure to File an Appeal

Talouzi next asserts that he received ineffective assistance because his trial counsel failed to file an appeal on his behalf, despite Talouzi's request to appeal. (ECF No. 243 at 2). In response to this claim, Counsel filed an affidavit with the Court stating that he "did not receive a request from Mr. Talouzi to file an appeal in his case" and that if he had received a request from Talouzi to file an appeal, he would have done so. (ECF No. 247 at 3). Accordingly, the undersigned conducted an evidentiary hearing on August 8, 2013 to determine the factual issue of whether Talouzi requested that his trial counsel note an appeal. (ECF No. 262).

At the evidentiary hearing, Talouzi testified that he was "shocked" to receive a consecutive sentence, and that immediately after sentencing, he asked Counsel to note an appeal for him. (*Id.* at 48). Talouzi testified that right after being sentenced, "I asked Mr. Carrico, I said, 'Are you going to file an appeal'? Mr. Carrico said, 'We have no grounds'. I said, 'Still', I told him, I said, 'Still, it won't hurt'." (*Id.*). At that point, the United States Marshals "were trying to rush [him] out of the court," and so he asked Counsel to visit him in his holding cell to discuss the matter further. (*Id.* at 48, 55).

13

Talouzi testified that Counsel agreed to visit him in the holding cell, but that he never did, and Talouzi was later transferred to the Carter County Detention Center. (*Id.* at 49).

Talouzi testified that when he arrived at the Carter County Detention Center on the date of sentencing, "the first thing [he] did is [he] tried to call Mr. Carrico from the . . . county jail," but was unsuccessful because Counsel "would not accept [his call], even though . . . [he] wasn't calling collect." (*Id.* at 49-50). Talouzi testified that he then called his brother and sister-in-law and asked them to "[p]lease have him come and talk to [Talouzi]" in jail. (ECF No. 262 at 50). Talouzi testified that on August 16, 2011, his second day in Carter County Detention Center, he spoke to his brother and sister-in-law again, who informed Talouzi that they had left a message with Counsel's secretary. (*Id.* at 51). He also testified that he tried to call Counsel again on August 16, 2011, but once more was unsuccessful. (*Id.*). On August 17, 2011, Talouzi was transferred from Carter County to Grayson County, but testified that he was not able to call trial counsel from Grayson County. (*Id.*). Talouzi testified that he spent a week in Grayson County, and then was transferred to "another county jail near [the] Missouri border," where he spent two nights. (*Id.* at 52). Talouzi was then transferred to Oklahoma, where he spent 10 days, and subsequently transferred to Philadelphia, where he spent approximately 10 days, before finally being transferred to Fort Dix. (*Id.*). According to Talouzi, the first time he spoke to trial counsel "was probably two months later, two months after [his] sentencing, sometime in October," at which point the deadline to file an appeal had already passed. (ECF No. 262 at 53).

In contrast, Counsel testified that he and Talouzi had "discussed throughout the whole process. . . whether or not he would want to assert an appeal if there was a

14

favorable ruling" on the issues of obstruction of justice and whether Talouzi's two offenses qualified as closely related offenses, and that "based upon [Counsel's] understanding with him at that time and [Counsel's] conversation with him, again, [Talouzi] had no intention to file an appeal if [they] had favorable rulings on those issues." (*Id.* at 25). Therefore, unlike a case where no discussion of appeal had occurred, Talouzi had made a decision in advance of sentencing as to what circumstances would merit an appeal. According to Counsel, immediately after sentencing, Talouzi's "demeanor was the same as it had been throughout [his] representation of him from the very beginning," in that Talouzi had a normal and pleasant demeanor. (*Id.* at 26). Counsel denied that Talouzi asked him to file an appeal, asked him to visit Talouzi in his holding cell, or otherwise inquired about appealing his sentence. (*Id.* at 73).

Counsel testified to having three telephone conversations with Talouzi following his sentencing. (*Id.* at 26). The first call from Talouzi occurred "within that time period for filing a notice of intention to appeal," but Talouzi did not request that he file an appeal. (*Id.*). Instead, they discussed the pending disposition of a companion case involving defendant Vickie Bailey.[3] (ECF No. 262 at 27). Counsel was under the impression that this first call was placed by Talouzi from Grayson County Detention Center. (*Id.* at 34). The second and third phone calls occurred on October 18, 2011 and December 5, 2011, and again related to the pending disposition of Vickie Bailey's case.

---

[3] According to Counsel, Vicky Bailey was "under indictment for the same charge, conspiracy to distribute contraband cigarettes, and [her attorney] had filed a motion that was pending to dismiss the indictment as it relates to contraband cigarettes based on the fact that . . . it was a legal and factual impossibility to be guilty of that charge." (ECF No. 262 at 35). If successful, it might have served as a basis for Talouzi to withdraw his guilty plea or otherwise challenge his conviction on the same charge. (*Id.*). However, prior to the District Court ruling on Ms. Bailey's motion, she received a pretrial diversion and her case was resolved. (*Id.* at 42).

(*Id.* at 27). Counsel reiterated that Talouzi "was a good client and at no point in time did he exhibit any frustration to me about the sentence that was imposed, and that was the day of the sentencing and then, on our subsequent phone conversations." (*Id.*). Counsel testified that he did receive phone calls from Talouzi's family members, which caused him to wonder if Talouzi wanted to file an appeal, but that ultimately "what he was wanting to do was coordinate with [Counsel]. . . about him following back up or [Counsel] following back up with him on the status of the Vickie Bailey case and that's what [they] talked about." (*Id.* at 40). Further, Counsel testified that Talouzi never questioned why he received a consecutive sentence, and that the only issue he expressed interest in subsequent to his sentencing was the outcome of Vickie Bailey's motion. (*Id.* at 37-38).

Considering the record in its entirety, the undersigned finds that Talouzi has failed to demonstrate by a preponderance of the evidence that he requested an appeal. *See Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958) (per curiam) ("Because the proceeding under 28 U.S.C. § 2255 is a civil collateral attack upon the judgment of conviction, the burden of proof is upon petitioner to establish [his claim] by a preponderance of evidence. . ."); *Hemetek v. United States*, No. 3:11-cv-00579, 2012 WL 3870620, at *6 (S.D.W.Va. Apr. 25, 2012). In doing so, the undersigned finds that Talouzi's testimony is not credible, whereas Counsel's testimony is credible. To begin with, Talouzi's explanation for seeking appeal, that he was "shocked" to have received a consecutive sentence for his supervised release violation, is largely inconsistent with the circumstances surrounding his plea and sentencing. Although Talouzi testified at the evidentiary hearing that his goal for his plea was to have his sentences run concurrently

and that that particular issue "was [his] only benefit on the sentencing for [his] plea," (ECF No. 262 at 46), the record plainly reflects otherwise. The government's case against Talouzi appears to have been quite strong, in that ATF Agent Willard actively participated undercover in Talouzi's contraband cigarette scheme, and personally purchased oxycodone directly from Talouzi. (ECF No. 249 at 25-27). By entering into a plea agreement, 22 out of the 24 counts contained in the indictment against Talouzi were dismissed, (ECF No. 69), and Talouzi received a three-level decrease in offense level for his early acceptance of responsibility. (ECF No. 250 at 21). Moreover, during the sentencing hearing, Counsel successfully argued against a two-level obstruction of justice enhancement and a two-level enhancement for convictions on unrelated offenses. (*Id.* at 8-9, 17). Having successfully prevailed on both sentencing objections, as well as secured a three-level deduction for early acceptance of responsibility, it does not seem likely that Talouzi would have been inclined to seek an appeal out of dissatisfaction with his sentence. Counsel testified that Talouzi "never voiced any frustrations to [him] at any point in time as to his sentence and [counsel] thought he was happy as to his sentence." (ECF No. 262 at 75).

The telephone conversations recorded at the Carter County Detention Center are likewise helpful in resolving the credibility issues. Although portions of the conversations are unintelligible, the parts that can be understood, when combined with the supporting documentation, bolster Counsel's recollections while contradicting the testimony supplied by Talouzi. (ECF No. 266-1). Indeed, Talouzi's telephone conversations on August 15, 2011 indicate that he was satisfied with his sentence. (ECF No. 266-1, Exhibit 4, Telephone Recordings 7 and 8). Contrary to Talouzi's testimony,

17

the records from the Detention Center establish that the first telephone call Talouzi made upon arriving at the Detention Center after his sentencing hearing was to his wife,[4] not to Counsel. (ECF No. 266-1 at 3). In the recording of Talouzi's conversation with his wife made shortly after sentencing, Talouzi is clearly heard explaining that his sentence included 36 months on the conviction and 21 months on the supervised release violation, for a total of 57 months, which Talouzi then described as "not bad." (ECF No. 266-1 at 3, Audio #8; ECF No. 266-1, Exhibit 4, Telephone Recording 8). Talouzi also stated that, at one point during the hearing, he thought he was going to get two years for obstruction, not get acceptance of responsibility, and end up with a sentence of nine years. When he avoided the obstruction enhancement, and got the acceptance of responsibility reduction, he felt that his wife must have been praying for him.  Again, he expressed that the sentence was not as bad as he thought it would be; particularly, when considering that he could have been sentenced to a term of imprisonment up to twenty-five years. Talouzi was also pleased that the District Judge recommended placement at FCI Morgantown, West Virginia and suggested Talouzi's participation in the comprehensive drug treatment program. Talouzi seemed optimistic that he would be eligible for release to a halfway house in a couple of years. Rather than sounding "shocked" and disappointed with his sentence, Talouzi conveyed relief and satisfaction with the result. Certainly, the conversation did not indicate any desire or plan by Talouzi to appeal his sentence.

---

[4] The undersigned assumes the woman on the recorded call was the woman Talouzi called his wife based upon the nature and number of recorded telephone conversations between them.

The telephone records also appear to negate Talouzi's testimony that he attempted to contact Counsel on August 15 and 16, 2011 while at the Carter County Detention Center. (ECF No. 262 at 49-51). Talouzi testified that he attempted to call Counsel on August 15, 2011 but Counsel refused to accept the call, and also on August 16, 2011 but was again unsuccessful. (*Id.*). However, the log of calls placed by Talouzi while at the Carter County Detention Center, which includes "no answer" and "reject" calls, does not reflect that Talouzi ever attempted to make an outgoing call to Counsel between August 15 and 17, 2011.[5] (ECF No. 266-1 at 10). Likewise, Talouzi testified that on August 16, 2011, he spoke to his brother and sister-in-law who informed him that they had left a message with Counsel's secretary to contact him. (ECF No. 262 at 51). This claim is similarly contradicted by the telephone records, which reflect only one call made to Talouzi's wife on August 16, 2011, (ECF No. 266-1 at 3, Audio # 5; ECF No. 266-1, Exhibit 4, Telephone Recording 5), and no other outgoing calls. (ECF No. 266-1 at 10).[6] There is simply no corroborating evidence beyond Talouzi's own self-serving testimony to support his claim that either he or a member of his family requested that Counsel file an appeal on his behalf.

On the other hand, Counsel's testimony is entirely consistent, both internally and

---

[5] Indeed, Talouzi acknowledges as much in post-hearing memorandum. (ECF No. 267 at 4). Although Talouzi seems to argue that the records contradict Counsel's claim that he spoke to Talouzi during the appeal period, (*Id.* at 4), the undersigned notes that Counsel testified that he spoke with Talouzi while he was at Grayson County Detention Center. (ECF No. 262 at 34). Accordingly, the phone records from Carter County Detention Center do not undermine the veracity of Counsel's testimony.

[6] Talouzi does appear to have made a call on August 15, 2011, in which he initially conversed with a woman in English, and subsequently conversed with a man in a language other than English. (ECF No. 266-1, Exhibit 4, Telephone Recording 7). Unfortunately, the participants are not identified in the recording and Talouzi has not provided the court with a transcript of the conversation. Accordingly, the undersigned cannot verify whether this conversation indeed involved Talouzi's brother and sister-in-law, nor whether he requested that they contact his trial counsel to request an appeal. The undersigned does note, however, that in the recording, Talouzi can be heard to state that "It's not that bad," and "It could have been much worse," with respect to his sentencing hearing. (*Id.*).

19

with the available case record. First, Counsel reasonably testified that he was happy with the result of Talouzi's sentencing hearing, and that he thought Talouzi was happy with his sentence, in light of the District Court's favorable rulings on his sentencing objections. (ECF No. 262 at 75). Counsel denied that Talouzi ever said anything to him about filing an appeal or otherwise expressed interest in an appeal, and further denied that he ever refused to meet with Talouzi. (*Id.* at 73-74). Second, Counsel has been a practicing attorney for nearly twenty years, during which time he has represented many criminal defendants in both state and federal court. (*Id.* at 9-10). As Counsel explained, even if he believed that there were no meritorious issues to appeal, he would have filed an appeal on Talouzi's behalf if he had been directed to do so. (*Id.* at 27-28). Counsel noted that indeed, he would have been paid a sum of money to file an *Anders* brief as a court-appointed attorney. (*Id.* at 28). Counsel did testify that he received a phone message from a member of Talouzi's family and wondered at the time if the purpose of the phone call was to seek an appeal. (*Id.* at 39-40). However, Counsel explained that upon actually speaking with Talouzi, it became clear that the purpose of his contact was to remain updated regarding the status of Vickie Bailey's criminal case. (ECF No. 262 at 40). Finally, there was no reason for Counsel to consult with Talouzi about an appeal after the sentencing because they had already discussed Talouzi's wishes regarding appeal. Counsel testified that prior to sentencing, he and Talouzi had discussed the potential of unfavorable rulings that might merit pursuing an appeal and had already decided on a course of action. Fortunately, none of those circumstances came to pass, and Talouzi received a good result. Therefore, Counsel did not act unreasonably when he failed to readdress the issue of appeal after the sentencing.

20

Having reviewed the record in its entirety, taking into account the credibility of both Talouzi and his trial counsel, and carefully weighing the testimony of both witnesses in light of the other evidence in the record, the undersigned **FINDS** that Talouzi has failed to demonstrate by a preponderance of the evidence that he requested his trial counsel to file an appeal. The undersigned further **FINDS** that the outcome of Talouzi's sentencing was so favorable that his trial counsel had no reason to believe that nonfrivolous grounds for an appeal existed, or that Talouzi was interested in filing an appeal. As a result, trial counsel's failure to file an appeal in this case did not constitute ineffective assistance of counsel.

## V.   **Proposal and Recommendations**

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the District Court accept and adopt the findings proposed herein and **RECOMMENDS** the following:

1. Petitioner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (ECF No. 242) be **DENIED**;

2. Petitioner's Application to Proceed Without Prepayment of Fees and Costs (ECF No. 244) be **DENIED**; and

3. This civil action be **DISMISSED, with prejudice,** and removed from the docket of this Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with

the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Chambers and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to the Movant, Respondent, and any counsel of record.

**FILED**:  April 25, 2014.

Cheryl A. Eifert
United States Magistrate Judge